UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ramsey Excavating Company,

    Plaintiff,

v.                                             No. 15-cv-497 (JNE/HB)
                                                  ORDER
Construction and General Laborers,
Local 563,

    Defendant.

---

      Plaintiff Ramsey Excavating Company and Defendant Construction and General Laborers, Local 563 ("the Union") arbitrated a dispute over the terms of their collective bargaining agreement. Ramsey subsequently brought this action under the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the Arbitrator's Award. The Union filed a counterclaim to enforce it.

      The case is now before the Court on the parties' dispositive cross-motions. For the reasons discussed below, Ramsey's motion is denied, the Union's motion is granted, and the Arbitrator's Award is enforced.

## Background

      Ramsey and the Union are parties to a collective bargaining agreement ("CBA") that "establish[es] rates of pay, wages, hours of employment, fringe benefits, and vacations, where applicable, and other terms and provisions concerning employment relations and collective bargaining relations and collective bargaining . . . on construction work in the State of Minnesota." Among other provisions, the CBA commits Ramsey to "call the Union for not less

1

than the first 50% of [the] Journey Laborers and Enrolled Apprentices" that it hires for a project, requires it to bargain with the Union over the workers' "conditions of employment," and prohibits it from discriminating against the workers on the basis of their "affiliation or non-affiliation with the Union, race, color, age, sex, creed, political or religious beliefs." The CBA also reserves for Ramsey "the right to manage its jobs in [its] best interest" and contains a number of agreements aimed at achieving "[a]ccident and injury free operations."

At Article 11, the CBA provides for the parties to arbitrate "[a]ny controversy over the interpretation of, or adherence to" these or other terms of the CBA. One such dispute arose in the spring of 2013. According to its Complaint, Ramsey at that time "was experiencing a high rate of work-related injuries, with seven employees suffering injuries while performing the physically demanding tasks required by Ramsey's laborers." Following that rash of injuries, Ramsey's workers' compensation carriers warned Ramsey that it "needed to reduce its work place injuries or else it would become uninsurable or the cost of workers' compensation insurance would become prohibitive."

At the recommendation of its insurers, Ramsey "decided to implement the CRT/MOH test" – an "isokinetic test" conducted by two private companies, Cost Reduction Technologies and Minnesota Occupational Health – "for laborer and operator positions." Ramsey did not consult with the Union on that decision.

Soon thereafter, in March of 2013, "Ramsey contacted the Union and specifically requested a female laborer in order to meet female and minority hiring goals on a project." The Union referred Rita Berger, who became the first subject of Ramsey's newly-implemented CRT/MOH testing procedure. Berger failed the test, and so Ramsey rejected her for the project.

Ramsey then requested that the Union refer another female laborer. The Union did so, and that laborer passed the CRT/MOH test and was accepted for the project.

The Union subsequently filed a grievance, alleging that Ramsey's implementation of the CRT/MOH test violated the CBA in two ways: first, because Ramsey had not given the Union notice and an opportunity to bargain over it; and second, because the test discriminates on the basis of a worker's disability, age, and gender. Ramsey disagreed with the Union's position on both counts.

In accordance with Article 11 of the CBA, the parties submitted their dispute to an Arbitrator, who issued his decision in November of 2014. It concludes, under the heading of "Award," as follows:

> It is held that the employer's conduct violated Article 3 of the collective bargaining agreement because the employer imposed the CRT/MOH Test without giving the union notice or an opportunity to bargain, even though the union operates an exclusive hiring hall. The test violates existing collective bargaining agreement terms. It is further held that the arbitrator could not make a decision based on the evidence whether the CRT/MOH Test discriminates against bargaining unit applicants as to disability status, age or sex.
>
> The employer is directed to cease violating the collective bargaining agreement and provide an opportunity for the union to bargain over a term and condition of employment i.e. the application and implementation of the CRT/MOH Test. Until such bargaining occurs, the employer is ordered to cease using the CRT/MOH Test. The arbitrator shall retain jurisdiction over the implementation of the remedy for 180 days.

Shortly after the decision issued, Ramsey petitioned the Arbitrator to "modify" his decision to either "sustain or deny" the Union's charge that the CRT/MOH test is discriminatory. The Arbitrator offered some supplemental explanation of his treatment of that issue, but otherwise declined to alter the Award.

In February of 2015, Ramsey filed this action, through which it seeks an order vacating the Arbitrator's Award.  With its counterclaim, the Union requests an order enforcing the Award.  The parties' dispositive cross-motions are now before the Court.

## Discussion

Ramsey brings its motion under Federal Rule of Civil Procedure 56, while the Union brings its competing motion under Rule 12(c).  Under both of these rules, judgment in favor of the movant is appropriate where the movant establishes that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

The two rules do, of course, require different modes of analysis.  Under Rule 56, the movant may support its position – and the non-movant may resist it – with "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), and the court is to view the record put before it "in the light most favorable to the nonmoving party," *Wagner v. Gallup, Inc.*, --- F.3d ----, No. 14-2746, *3 (8th Cir. June 12, 2015).  In contrast, under Rule 12(c), the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).  Accordingly, in that posture, the court "generally must ignore materials outside the pleadings," though "it may consider . . . materials that are necessarily embraced by the pleadings." *Porous Media*, 186 F.3d at 1079 (internal quotation omitted).

These differences are of no consequence here. There are no disputes as to the facts that led the parties to the arbitration, and the Court, as indicated above, takes them as Ramsey pled them. Furthermore, this case "arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,"[1] which "confers jurisdiction on federal courts over cases involving a breach of a collective bargaining agreement . . . ." *Alcan Packaging Co. v. Graphic Commc'n Conference, Int'l Bhd. of Teamsters & Local Union No. 77-P*, 729 F.3d 839, 841 (8th Cir. 2013), *as corrected* (Oct. 30, 2013) (internal citation omitted). The LMRA also "authorizes federal courts to fashion the substantive law that governs such labor disputes . . . ." *Id.* (internal citation omitted). Under that body of law, federal courts must

> give substantial deference to labor arbitration awards because federal policy favors the resolution of private labor disputes by arbitration to which the parties agreed. As we have often noted, Supreme Court precedent teaches that an arbitrator's power is broad but not unlimited. An award "is legitimate only so long as it draws its essence from the collective bargaining agreement." *United*

---

[1]   In its Complaint and its briefing on these motions, Ramsey invokes only the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 1985; it makes no mention of the Federal Arbitration Act ("FAA") or any grounds for vacatur thereunder. The Union's statement of its counterclaim to enforce the Arbitrator's Award, however, invokes both the LMRA and the section of the FAA that governs the confirmation of arbitral awards, 9 U.S.C. § 9.

   That provision of the FAA provides that a party may apply to a court for an order confirming an arbitral award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. The arbitration provision in the CBA to which Ramsey and the Union are parties states only that a "decision of the Arbitrator shall be final and binding on the parties to this Agreement who are the parties to the dispute . . . ." The Eighth Circuit has specifically rejected the notion that the "inclusion of the phrase 'final and binding' in an agreement to arbitrate makes the award enforceable under the FAA." *PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1254 (8th Cir. 1998).

   In any event, the Union's counterclaim is properly brought under the LMRA. *See Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1097 (8th Cir. 2004) (explaining that "section 301 of the LMRA serves as an independent source of federal jurisdiction for district courts to enforce arbitration awards" and that "section 301 takes precedence over the FAA where conflicts might exists [sic]"); *Int'l Ass'n of Heat and Frost Insulators & Asbestos Workers, Local Union 34 v. General Pipe Covering,* 792 F.2d 96, 98 (8th Cir. 1986) (finding that the court was authorized to enforce an arbitration award under § 301 of the LMRA where the CBA did not contain the language required by 9 U.S.C. § 9).

> *Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "The arbitrator may not ignore the plain language of the contract. . . . But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We do not review an arbitrator's interpretation of the CBA, so long as the arbitrator does not "disregard or modify unambiguous contract provisions." *Trailmobile,* 223 F.3d at 747.

*Boehringer Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers*, 739 F.3d 1136, 1139-40 (8th Cir. 2014). The materials that are thus central to these motions – the Arbitrator's Opinion and Award, his response to Ramsey's request for modification, and the CBA – are embraced by the pleadings[2]; in fact, they are attached to them. Whether that Award draws its essence from the CBA is a matter of law for the Court to decide.

Ramsey, of course, argues that it does not. Ramsey does not challenge the propriety of the relief the Arbitrator ordered – that Ramsey "cease using the CRT/MOH Test" until it "provide[s] an opportunity for the union to bargain over" it. Instead, Ramsey attacks the conclusion underlying that relief – that its unilateral implementation of the CRT/MOH test violated the requirement in Article 3 of the CBA that it bargain over "conditions of employment" affecting "Employees represented by [the Union]."

That issue, as the parties argued it in the arbitration, turned on whether the laborers the Union refers to Ramsey are properly considered "employees," rather than merely "applicants" for employment. As the Arbitrator explained in his Opinion and Award, "[b]asically, if [Ramsey] is correct and the referrals are 'applicants', then the pre-hire testing of an 'applicant' is

---

[2]   Both of the parties' pleadings and the Arbitrator's Opinion and Award refer to a CBA that expired on April 30, 2013. In supplemental briefing, Ramsey and the Union both indicate that they are parties to a current CBA that is identical in all material respects.

6

not a mandatory subject of bargaining.  If the union is correct and [the referrals] are 'employees', then the pre-hire testing is a mandatory subject of bargaining."

The CBA does not define "employees."  Therefore, to give meaning to that term, the Arbitrator turned to Article 6.  Entitled "Hiring Employees," that section of the CBA contains these relevant passages:

> Nothing in this Agreement shall be deemed to constitute a hiring hall or to require the Employers to call only the Union for Employees, or to hire only Employees referred by the Union.
>
> When called and the Union fails to provide qualified workers within twenty-four (24) hours, the Employer shall be free to employ anyone to perform the work at the appropriate scale as contained herein.
>
> . . .
>
> A. **Journey Laborers and Enrolled Apprentices.**  The Employers agree to give the Union the first opportunity when hiring Journey Laborers and Enrolled Apprentices.  First opportunity shall be defined to mean that the Employer shall call the Union for not less than the first 50% of their Journey Laborers and Enrolled Apprentices. . . .

The Union argued that these "first opportunity" protocols establish an exclusive hiring hall[3] despite the disclaiming language that precedes them; that precedent and "time-honored principle" dictate that workers referred to an employer through an exclusive hiring hall are "employees" rather than "applicants"; and that the CBA, which specifies that it is "intended to be

---

[3]   A hiring hall is an arrangement in which a union "refers both members and nonmembers of the union [to an employer] for . . . work. . . . The hiring hall is not the exclusive source of employment for . . . workers; they are free to seek employment through other mechanisms, and employers are not restricted to hiring only those persons recommended by the union." *Breininger v. Sheet Metal Workers In''l Ass'n Local Union No. 6*, 493 U.S. 67, 71 (1989).  An "exclusive hiring hall" is "a term of art denoting the degree to which hiring is reserved to the union hiring hall.  Hiring is deemed to be 'exclusive,' for example, if the union retains sole authority to supply workers to the employer up to a designated percentage of the work force or for some specified period of time, such as 24 or 48 hours, before the employer can hire on his own." *Id.* at 71 n.1.

in conformity with all applicable and valid State and Federal laws, rules and regulations," should be so interpreted here. The Arbitrator agreed.

Ramsey argues here – as it did in the arbitration – that that reasoning cannot stand for two main reasons. First, Ramsey contends that the Arbitrator could not have found that the CBA establishes an exclusive hiring hall without impermissibly "rewriting" the "first opportunity" protocols of Article 6. Ramsey's point is that Article 6(A) of the CBA requires it only to "call" the Union for referrals for the first 50% of laborers on a project; it does not obligate it to hire those referrals.

This line of attack is unavailing. The question here is not whether the Arbitrator was mistaken when he concluded that the CBA establishes an exclusive hiring hall; it is whether he was "arguably construing or applying" the CBA when he did so. *Boehringer*, 739 F.3d at 1140 (internal quotation omitted). It is clear that he was. The Arbitrator's conclusion is undeniably rooted in Article 6; as he explained it,

> [t]he union argues . . . that, consistent with well-established NLRB authority, an exclusive hiring hall has been established in the CBA because Article 6 (A) requires the first half of the workforce to be hired through the union." [Post-hearing brief of union at 20]. . . .
>
> It is clear that the parties intended that the first 50% of those hired be referred by the union. Does referring 50% of the workforce make the union a hiring hall? Carpenters Local 17, 312 NLRB 82,84 (1993) makes clear "there is no question that [the union's] hiring hall is an exclusive hiring hall notwithstanding that the employer has the right to select 50% of the workforce on the job." The NLRB has expressly held that an exclusive hiring hall exists where the collective bargaining agreement requires the employer to obtain the first half of its workforce through the union.

What's more, even were this a matter of first impression for the Court to decide, Ramsey's position is dubious. It is true, as Ramsey points out, that Article 6(A) obligates it to "call" the Union for the first 50% of laborers on a project. And the CBA certainly does not require

Ramsey to unquestioningly accept any individual the Union sends its way. However, Ramsey fails to account for the provision of Article 6 that complements the "first opportunity" protocols by specifying that, when Ramsey "calls" the Union to fill a position – as it must for the first 50% of laborers – it has the right to hire someone who was not referred by the Union only if the Union "fails to provide qualified workers with . . . 24 hours." The Arbitrator's determination "that the parties intended that the first 50% of those hired be referred by the union" is thus amply supported by the language of the CBA.

Ramsey's second attack on the Arbitrator's reasoning focuses on the disclaimer that appears in Article 6 that "[n]othing in this Agreement shall be deemed to constitute a hiring hall or to require the Employers to call only the Union for Employees, or to hire only Employees referred by the Union." In Ramsey's view, the Arbitrator could not have found that the CBA establishes an exclusive hiring hall without either ignoring or "erasing" this "clear and unambiguous" disclaimer. Thus, Ramsey asserts, "the Award does not draw its essence from the contract, and must be vacated."

This too is unpersuasive. The Arbitrator's Opinion and Award demonstrates that he neither ignored nor erased the disclaimer from the CBA as Ramsey contends. To the contrary, the Arbitrator carefully considered it at length:

> The employer contends that the language "nothing in this agreement shall be deemed to constitute a hiring hall" makes clear that they are dealing with "applicants". The union argues this language is "stray phrasing" and "does not nullify the fact that, consistent with well-established NLRB authority, an exclusive hiring hall has been established in the CBA because Article 6 (A) requires the first half of the workforce to be hired through the union." [Post-hearing brief of union at 20].
>
> Based on these seeming inconsistencies, the rules of interpretation of contracts must be applied. To make sense of inconsistent expressions in a contract, "one of the more helpful guides to interpretation is to discover the apparent purpose of the parties." [Murray on Contracts, 3rd Ed. 421 (Michie Company 1990)] What was

9

the purpose of the parties behind this contract? It is clear that the parties intended that the first 50% of those hired be referred by the union. Does referring 50% of the workforce make the union a hiring hall? Carpenters Local 17, 312 NLRB 82,84 (1993) makes clear "there is no question that [the union's] hiring hall is an exclusive hiring hall notwithstanding that the employer has the right to select 50% of the workforce on the job." The NLRB has expressly held that an exclusive hiring hall exists where the collective bargaining agreement requires the employer to obtain the first half of its workforce through the union. [Id].

Consequently, there seemingly are inconsistent expressions in the contract. One clause states "nothing in this agreement shall be deemed to constitute a hiring hall" while another clause in the same article states "the employers agree to give the union the first opportunity when hiring Journey Laborers and Enrolled Apprentices." The "first opportunity shall be defined to mean that the employer shall call the union for not less than the first 50% of the Journey Laborers and Enrolled Apprentices." How should these seemingly inconsistent expressions be interpreted?

Another rule of interpretation is "the transaction must be viewed as a whole." [Murray on Contracts, 3rd Ed. 423]. "Numerous cases indicate that all the different parts of an agreement must be viewed together, i.e., as a whole, and each part interpreted in light of all the other parts." [Id].

Further, "it is a general rule of interpretation that a reasonable interpretation of an expression is preferred to one that is literal, unusual, absurd, or of no effect." [Id]. Professor Murray advises that "where one clause of the contract suggests one intention and another clause of the same contract suggests an inconsistent intention, the intention manifested in the principle or more important clause should be preferred. [Id at 427]. In this case, it is clear that the more important term in the contract is that the union be given the first opportunity to refer the first 50% of its members when the employer is hiring Journey Laborers and Enrolled Apprentices.

The subsequent conduct of the parties aids in this interpretation. The employer and the union have as a past practice focused on the 50% clause. While the language "nothing in this agreement shall be deemed to constitute a hiring hall," exists in the contract, it is not the principal purpose behind the contract. The intention of the parties has been to provide the union with an opportunity to place the first 50% of union members in the jobs. Further, past practice under the collective bargaining agreement has been to bargain over pre-employment testing and to apply such testing adopted in the collective bargaining agreement to both existing employees and job applicants, consistent with the union operating as an exclusive hiring hall. "Exclusive hiring hall" is a term of art established by the National Labor Relations Board to describe a system that requires referring a certain percentage of applicants to an employer for hire pursuant to the collective bargaining agreement. The phrasing in the second paragraph of Article 6 (A)

>does not nullify the fact that, consistent with well-established NLRB authority, an exclusive hiring hall has, in fact, been established under the collective bargaining agreement because Article 6 (A) requires the first half of the workforce to be hired through the union.  The language "nothing in this agreement shall be deemed to constitute a hiring hall" is simply inconsistent with the law, a reasonable and lawful and effective interpretation of the contract, the purpose and intention of the parties to the collective bargaining agreement, and the past practice of the parties regarding pre-employment testing.  Consequently the referrals by the union to the employer are not "applicants" but are "employees".  Because by law and this contract the people referred by the union to the employers are "employees", the change in "pre-employment testing such as the application of the CRT/MOH Test is a mandatory subject of bargaining."

Thus, the Arbitrator fundamentally disagreed with Ramsey's contention that the disclaimer is an unambiguous expression of the parties' intent with respect to their hiring arrangement.  He found that intent expressed instead in the "first opportunity" protocols of Article 6.  Contrary to Ramsey's argument, this sort of analysis is no grounds for vacatur.  Indeed, it is the approach required of the Arbitrator, as

>[t]he law . . . demands that collective bargaining agreements be construed as a whole with the terms read in the context of the entire agreement. . . . The law imposes the obligation on the arbitrator of harmonizing possibly discordant provisions of a CBA. . . . Thus, the arbitrator's decision to read [one section of the CBA] in light of [another] is reasonable and lies within the sphere of his obligation.

*Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B*, 284 F.3d 821, 825 (8th Cir. 2002).  Furthermore, the Arbitrator properly resolved the inconsistency he found between the disclaimer and the "first opportunity" provisions "by considering the parties' bargaining history and past practices – the 'industrial common law [that] is equally a part of the bargaining agreement although not expressed in it.'"  *Int'l Woodworkers of Am., U.S. AFL-CIO v. Weyerhaeuser Co.*, 7 F.3d 133, 136 (8th Cir. 1993) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 581–82 (1960)).

At bottom, the courts are "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the

contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987). "It is the arbitrator's construction and application of the contract for which the parties bargained. The courts have 'no business overruling [an arbitrator] because their interpretation of the contract is different from his.'" *Osceola Cnty. Rural Water Sys., Inc. v. Subsurfco, Inc.*, 914 F.2d 1072, 1075 (8th Cir. 1990) (quoting *United Steelworkers,* 363 U.S. at 599).  Applying these principles here requires the Court to enforce the Arbitrator's Award.  The Arbitrator resolved the parties' dispute regarding whether Ramsey must bargain with the Union over the use of the CRT/MOH test by construing and applying the relevant terms of the CBA.  That is precisely what the parties sought when they submitted their dispute to arbitration.

As a final note, Ramsey does also mount a perfunctory challenge to the Arbitrator's handling of the second issue submitted to him – whether the CRT/MOH test violates the CBA because it discriminates against Union-referred workers on the basis of disability, age, and gender.  Ramsey argues that an alternative ground for vacatur can be found in the Arbitrator's "blatant refusal" to address this issue, which it says is "simply indicative of an arbitrator who sought to impose his own sense of industrial justice rather than address . . . the issue before him." However, as is evident from both the Arbitrator's Opinion and Award and his response to Ramsey's request for modification, the Arbitrator plainly did not "refuse to address" the Union's discrimination charge.

For all of the reasons explained above, the relief the Arbitrator awarded is enforced here.

Based on the files, records, and proceedings herein, and for the reasons discussed above, IT IS ORDERED THAT:

1. Plaintiff Ramsey Excavating Company's Motion for Summary Judgment [ECF No. 13] is DENIED.

2. Defendant Construction and General Laborers, Local 563's Motion for Judgment on the Pleadings [ECF No. 18] is GRANTED.

3. The Arbitrator's Award is ENFORCED.

4. Per the Arbitrator's Award, "[Ramsey Excavating Company] is directed to cease violating the collective bargaining agreement and provide an opportunity for [Construction and General Laborers, Local 563] to bargain over a term and condition of employment i.e. the application and implementation of the CRT/MOH Test.  Until such bargaining occurs, [Ramsey Excavating Company] is ordered to cease using the CRT/MOH Test."

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 30, 2015

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge